## *In re* H. B. CLAFLIN Co.

*(Circuit Court, S. D. New York. October 7, 1891.)*

CUSTOMS DUTIES—CLASSIFICATION—"HEMSTITCHED HANDKERCHIEFS."

Hemstitched cotton handkerchiefs, known as such in trade and commerce at the time of the passage of the tariff act of March 3, 1883, having a hem of one inch or more in breadth, with several threads drawn out from the material at the head of the hem, and the hem stitched down by an open stitch, are not "hemmed handkerchiefs," within the provision of Schedule I (Tariff Ind. New, par. 325) of said tariff act, but are dutiable as "manufactures of cotton not specially enumerated or provided for" at 35 per cent. *ad valorem* under the same schedule of said tariff act, par. 324.

At Law.

This was an application by the importers under the provisions of section 15 of the act of congress entitled "An act to simplify the laws in re-

lation to the collection of the revenues," approved June 10, 1890, for a review by the United States circuit court of a decision made in this matter by the board of United States general appraisers, affirming the decision of the collector of the port of New York in the classification for duty of certain merchandise entered at said port by different entries during the months of August and September, 1890. The merchandise was classified for duty by the collector as "hemmed cotton handkerchiefs," and duty was assessed thereon at the rate of 40 per cent. *ad valorem*, under the provisions of Schedule I (Tariff Ind. New, par. 325) of the tariff act of March 3, 1883. The importers protested, claiming that the goods were dutiable at 35. per cent. *ad valorem* under the same schedule (Tariff Ind. New, par. 324) of said tariff act, as "manufactures of cotton not specially enumerated or provided for." Testimony was taken on behalf of the importers under an order of court before one of said board of United States general appraisers pursuant to the provisions of the above cited act of June 10, 1890, and it was shown that the articles in question were cotton handkerchiefs having a border of one inch and more in width, which was turned down and stitched fast to the body of the handkerchief after a certain number of threads had been drawn out at the head of such fold or hem, the stitch used being an open stitch, and that the result was an article known to the trade and commerce of this country in March, 1883, and prior thereto, as a "hemstitched handkerchief;" and that the term "hemmed handkerchiefs" or "hemmed cotton handkerchiefs," as used in the trade at that time, did not include the articles in question, which were always designated as "hemstitched." It was admitted by the witnesses for the importers that the noun "hem," the verb "to hem," and the verb "to hemstitch," had no other or different meanings in trade and commerce at that time from the meanings of those words as given in the standard dictionary of the English language. The government was not able to contradict the trade testimony to the effect as given above, but contended that the commercial designation was not controlling in this case, but that the words "hemmed handkerchiefs" must be taken in their ordinary meaning, as understood in the English language; and that, upon all the testimony, the hemstitch was only an addition to or ornamentation at the head of a hem.

*Comstock & Brown*, for importers.

*Edward Mitchell*, U. S. Atty., and *James T. Van Rensselaer*, Asst. U. S. Atty., for collector of the port.

LACOMBE, Circuit Judge, (*orally.*) I am strongly inclined to the opinion that congress did not intend that these handkerchiefs should pay the lower, rather than the higher, rate of duty, for they are more elaborate and expensive, and further advanced, than ordinary hemmed handkerchiefs. It is quite probable that distinction was intended to be made between handkerchiefs in the piece, on the one hand, and handkerchiefs which had been advanced beyond handkerchiefs in the piece by a process of hemming, on the other. But I do not feel warranted in disposing of this case on my mere assumption as to what congress intended, in face

of the language used, which, when read with the light we have from the mercantile testimony, (testimony which, under the decisions of the supreme court, we are to take as our head-light in all interpretations of tariff statutes,) has a very plain and unmistakable meaning. A duty is laid on "hemmed handkerchiefs." Now, undoubtedly, as to the popular meaning of that term,—the meaning that is given in the dictionaries,—the board of appraisers is entirely right; these handkerchiefs are hemmed. In addition to the hem, there is also a stitching made in the process of making the hem,—an ornamentation to the articles which makes them hemstitched handkerchiefs; but they are none the less popularly, and in the ordinary meaning of the term, "hemmed handkerchiefs." But we have testimony in the case, which apparently was not before the board of appraisers, and which, it seems to me, under the rule which has been laid down for the guidance of the circuit courts by the supreme court as to the credit which is to be given to the commercial meaning of terms, must be conclusive here   It is immaterial whether or not the trade do or do not give the same meaning to the verb "hem" or to the noun "hem" that the dictionary does. It may be that they have never had any occasion to use those words commercially or to give them any trade meaning. But it does appear, by testimony which is absolutely uncontradicted, that the particular phrase "hemmed handkerchiefs" has been wrenched, as we may say, from its ordinary meaning as given in the dictionary, and expressly confined by the entire trade and commerce of this country to a particular variety of hemmed handkerchiefs, to-wit, those illustrated by Exhibit B, and that this was the condition of affairs long before the tariff of 1883 was passed. It does not merely appear that these articles are known by a special trade name as "hemstitched handkerchiefs," because that might very well be, and still they would come within the general heading of "hemmed handkerchiefs;" but the importers here have gone further, and shown that the general term "hemmed handkerchiefs" has been restricted by trade, no longer used as a family name, under which there are various subheadings, but confined to a particular and special class of articles. In other words, they have come within the rule which was laid down in this circuit in *Morrison* v. *Miller*, 37 Fed. Rep. 82. The testimony is particularly strong in this case, because there is no conflict about it. No witness has been produced on the part of the government to controvert in any way the importers' claim that the general trade and commerce of this country had, before the passage of the act, given a special and peculiar trade meaning to the words "hemmed handkerchiefs," which, but for that trade usage, would have had a different meaning; and we must assume that it was with a knowledge of that meaning that congress used the words. Under these circumstances, I feel constrained to reverse the decision of the appraisers, and direct that the goods be classified under paragraph 324.